IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| HIGHSIDE PORK, L.L.C., ) | |
| ) | |
|     Debtor. ) | Bankruptcy No. 10-00020 |
| --------------------------------------------- | |
| WELLS FARGO BANK, N.A., ) | |
| ) | Adversary No. 10-09031 |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| INNOVATIVE AG SERVICE ) | |
| COMPANY; VMC MANAGEMENT ) | |
| CORPORATION; AND ) | |
| VETERINARY MEDICAL CENTER ) | |
|     Defendants. ) | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

    This matter came before the Court on the Motion of Wells Fargo Bank, N.A. ("Wells Fargo") for Summary Judgment. Defendants VMC Management ("VMC") and Veterinary Medical Center filed a Resistance. Defendant Innovative Ag Service Company ("IAS") joined in the Resistance. The Court heard arguments in a telephonic hearing on November 5, 2010. Attorney G. Mark Rice represented Wells Fargo. Attorney Joshua Kraushaar represented VMC and Veterinary Medical Center. Attorney Mark Feldmann represented Innovative Ag Service Company. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

**STATEMENT OF THE CASE**

    The central issue in this case is whether HighSide Pork, L.L.C. ("HighSide") sold pigs to Brett and Patricia Shulista (the "Shulistas") before HighSide and the Shulistas each filed bankruptcy. If HighSide did <u>not</u> sell the pigs to the Shulistas, then HighSide still owned the pigs at

the time HighSide filed for bankruptcy. The proceeds from the Court-ordered sale of the pigs would belong to the HighSide bankruptcy estate. HighSide's secured creditors (i.e., VMC, Veterinary Medical Center, IAS and Wells Fargo) would share in an eventual distribution according to priority of lien.

If HighSide did sell the pigs to the Shulistas, then the Shulistas owned the pigs at the time they filed bankruptcy. The proceeds from the Court-ordered sale of the pigs would belong to the Shulista bankruptcy estate. The Shulistas' secured creditors (including Wells Fargo) would share in that distribution. The Court finds the undisputed facts show HighSide sold the pigs to the Shulistas before bankruptcy and the Court-ordered sale. The Court grants Wells Fargo's Motion for Summary Judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

a. The Bankruptcies and the Claims

The Shulistas are in the hog business both individually and through their ownership of HighSide. HighSide is a limited liability company they formed to produce SEW (Special Early Wean) pigs. The Shulistas are the sole members of, and control HighSide. The Shulistas filed for Chapter 12 bankruptcy on January 8, 2010 (Case No. 10-00019). HighSide separately filed a Chapter 12 bankruptcy on the same date (Case No. 10-00020). Both the Shulistas and HighSide were involved in some aspects of the hog operation. They both owned pigs and hogs at various times. Ownership of the animals routinely shifted between the two.

When HighSide and the Shulistas filed their respective bankruptcy cases, there was uncertainty about which of them owned 5002 head of feeder pigs (the "Pigs") at that time. The Pigs were at risk of going unfed. HighSide and the Shulistas both filed expedited motions to sell the

Pigs on the first day of their bankruptcy cases. The Court authorized HighSide and the Shulistas to market and sell the Pigs. The Order stated that "the liens of all parties claiming an interest in pigs [with the exception of the custom growers' liens not at issue here] shall attach to the proceeds in the same manner and fashion as if the [P]igs had not been sold and with the same priority as if the [P]igs had not been sold." Order Approving Motion to Sell Free and Clear of Liens Except the Liens of Custom Growers Under Iowa Code §579B at 2, Case No. 10-00019, ECF No. 13. The Court required the proceeds from the sale to be held in a separate account pending resolution of the question of who is entitled to the proceeds. The $250,671.50 in sale proceeds is being held in escrow by the Shulistas' counsel.

Wells Fargo is a creditor of both HighSide and the Shulistas. Before filing bankruptcy, the Shulistas executed four promissory notes in favor of Wells Fargo. HighSide executed a commercial guaranty of Wells Fargo's loans to the Shulistas. On June 23, 2009, Wells Fargo perfected its security interest by filing a UCC Financing Statement with the Iowa Secretary of State.

After HighSide and the Shulistas filed bankruptcy on January 8, 2010, Wells Fargo filed a Proof of Claim in both cases. Each Proof of Claim was for $579,372.05. This represents the total amount due under the notes on the petition date. No objection to Wells Fargo's Proof of Claim has been filed in either case.

Veterinary Medical Center and VMC also became involved with HighSide before the bankruptcy. They provided management and veterinary services. HighSide's Amended Schedule G (Executory Contracts and Unexpired Leases) lists VMC's "Management agreement" with HighSide. Both Veterinary Medical Center and VMC claim a "perfected security interest" in the

3

Court-ordered sale proceeds "as a veterinarian." Both filed a UCC Financing Statement on December 28, 2009. Each Financing Statement lists as collateral "all hogs owned by Highside Pork, LLC." Neither lists hogs or pigs owned by the Shulistas.

HighSide has listed both VMC and Veterinary Management Center among its creditors. HighSide's Schedule D lists Veterinary Medical Center as having a secured claim of $80,430.92 for "veterinary services." HighSide also listed VMC as having a secured claim of $47,848.64 for "management and payroll services."

IAS is an agricultural supplier that also dealt with HighSide before bankruptcy. IAS claims a statutory agricultural supply dealer lien in the sale proceeds. IAS filed a UCC Financing Statement on December 7, 2009. The encumbered property is described as "all of the debtor's hogs and the proceeds of the debtor's hogs grown at [HighSide's] address listed above." IAS describes itself as "claiming an agricultural supplier's lien pursuant to Iowa Code Chapter 570A."

HighSide's Schedule D lists IAS's secured claim in the amount of $95,000.00. That claim is for a "statutory lien" for "Hogs at 3818 Sutton Road, [Central] City (Hillside Pork LLC) . . ." HighSide's Schedule F (List of Unsecured Nonpriority Claims) also includes another IAS claim of $102,540.09 for "hog feed deliveries."

    **b. The Material Facts on Ownership**

The key issue—and thus the most important material facts—relate to ownership of the pigs before bankruptcy. Wells Fargo attached an affidavit of Brett Shulista to address the question. He states he and Patricia Shulista owned the Pigs individually and not through HighSide at the time of the bankruptcies and Court-ordered sale. He describes HighSide as being in the business of farrowing hogs. HighSide sells segregated early weaned ("SEW") pigs to growers when the pigs

weigh about 10-18 pounds. He states that "Highside utilizes certain invoices to document the sale of SEW pigs to various parties. This type of sale invoice was also used to document the sale of the SEW pigs to us, Brett and Patricia Shulista . . . ." He states that they purchased SEW pigs from HighSide and placed the SEW pigs with various growers to be raised to market weight. He claims they intended to provide a market for HighSide SEW pigs and to earn a profit from the slaughter hogs.

At the time the Shulistas filed bankruptcy, they had not paid HighSide for all the SEW pigs. A total of 9320 SEW pigs were sold by HighSide to the Shulistas individually (or their d/b/a, Shulista Farms) between January 9, 2009 and December 11, 2009. The issue here focuses on 5,002 of those pigs. Wells Fargo claims those pigs were sold to the Shulistas and not subject to the liens asserted by VMC, Veterinary Medical Center, and IAS.

VMC, Veterinary Medical Center, and IAS question the existence of the sale. They point to the lack of documentation of a sale between the closely-related parties. They also attached an Affidavit of Michael Westcott, the business manager for VMC, stating that HighSide periodically sent its creditors reports regarding its shipments of SEW pigs to various producers. Mr. Wescott stated that "[d]uring the calendar year of 2009, VMC and Veterinary Medical Center received no notice that pigs had been transferred from Highside Pork, LLC to Brett and Patricial Shulista, d/b/a Shulista Farms."

    c. **Summary Judgment Arguments**

On October 11, 2010, Wells Fargo filed this Motion for Summary Judgment. Wells Fargo asserted that the undisputed record demonstrates the Shulistas owned the Pigs at the time of the

5

Court-ordered sale. Wells Fargo argued the Shulistas purchased them from HighSide, and the purchase functionally extinguished the agricultural liens of HighSide's other creditors in the Pigs.

VMC and Veterinary Medical Center filed a Resistance in which IAS joined. They argued that there are issues of material fact regarding the ownership of the Pigs at the time of the Court-ordered sale. They argued there are no promissory notes, loan documents, or other evidence of any consideration for the sale.

Wells Fargo filed a Reply. It argued that the simple fact that Defendants did not receive notice of HighSide's sale did raise fact issues about whether a sale occurred. Wells Fargo attached invoices from HighSide to the Shulistas as evidence of the sale. Wells Fargo also stated that the Shulistas individually entered into agreements with the growers immediately after the sale. Wells Fargo claimed this unequivocally demonstrates the Shulistas owned the Pigs and the growers possessed them under arrangements with the Shulistas. Wells Fargo also argued that the Shulistas' promise of future payment to HighSide was sufficient consideration for HighSide's transfer of the Pigs and completed the sale.

During the November 5, 2010 telephonic hearing on the Motion for Summary Judgment, the parties reiterated those arguments. In particular, VMC and Veterinary Medical Center reiterated that because HighSide and the Shulistas were so closely related more facts were needed to determine the sale issue. They conceded that the promise of future payment is adequate consideration for a sale, but argued the invoices were insufficient documentation. They also noted that even if the sale occurred, they believed their liens would follow the collateral. That issue, however, was not raised in resisting summary judgment and is not before the court.

**CONCLUSIONS OF LAW**

   a.  **Summary Judgment Standards**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (2010); Fed. R. Civ. P. 56(c)(2) (2010). Put another way, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In considering a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party. Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 842 (8th. Cir. 2010); Ferguson v. U.S., 484 F.3d 1068, 1072 (8th. Cir. 2007).

The moving party has the burden of showing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, 477 U.S. at 248. As the Supreme Court has stated, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond,

> summary judgment should, if appropriate, be entered against that party.

Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(e)(2) (2010). See also Celotex, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by "showing"—that is, pointing out to the [court]—that there is an absence of evidence to support the nonmoving party's case.").

### b. Rules of Statutory Interpretation

"[T]he Supreme Court of Iowa has ultimate autonomy in interpreting the laws of [the State of Iowa], and we are bound by its interpretation." Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) (citing Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)). This Court has recently summarized and used these Iowa law standards to interpret similar provisions of the Iowa Code. In re Crooked Creek Corp., 427 B.R. 500, 505 (Bankr. N.D. Iowa 2010). "The goal in interpreting a statute is to determine and give effect to the legislature's intent." Id. (quoting Holiday Inns Franchising v. Branstad, 537 N.W.2d 724, 728 (Iowa 1995)). "[I]n order to ascertain the legislature's intent, we look to the spirit of the statute as well as the words and give a 'sensible, workable, practical, and logical construction.'" Id. "The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases." Crooked Creek, 427 B.R. at 505 (quoting Schadendorf v. Snap-On Tools Corp., 757 N.W.2d 330, 337 (Iowa 2008)). A court should interpret a statute so that no part of it is made irrelevant or superfluous. Id. The court should not construe a statute in a way that would produce impractical or absurd results. Crooked Creek, 427 B.R. at 505 (citing Carolan v. Hill, 553 N.W.2d at 887). The court should not speculate as to the probable legislative intent apart from the wording used in the statute. Id. "Iowa courts look beyond the statute's express terms only when the language is ambiguous. 'A statute . . . is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute.'

Language that is 'plain, clear, and susceptible to only one meaning' is unambiguous." In re Western Iowa Limestone, Inc., 538 F.3d 858, 863 (8th Cir. 2008) (quoting City of Waterloo v. Bainbridge, 749 N.W.2d 245, 248 (Iowa 2008)).

### c. Sale of Goods

The first important question in this case is whether a sale occurred between HighSide and the Shulistas. Iowa has adopted the Uniform Commercial Code ("IUCC") in Chapter 554 of the Iowa Code. Purina Mills, L.L.C. v. Less, 295 F. Supp.2d 1017, 1031 (N.D. Iowa 2003). "Unless the context otherwise requires, [Article 2 of the UCC] applies to transactions in goods. . . ." Iowa Code § 554.2102. "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." § 554.2105(1). Goods must be both existing and identified before any interest in them can pass. § 554.2105(2). Iowa courts have interpreted the sale of goods to include the sale of livestock. Midwest Hatchery & Poultry Farms, Inc. v. Doorenbos Poultry, Inc., 783 N.W.2d 56, 61 (Iowa Ct. App. 2010) (citing Flanagan v. Consolidated Nutrition, L.C., 627 N.W.2d 573, 577 (Iowa Ct. App. 2001)); see also Purina Mills, 295 F. Supp.2d at 1031 (weanling pigs fall within the IUCC Article 2 definition of "goods").

"A 'sale' consists in the passing of title from the seller to the buyer for a price." Iowa Code § 554.2106(1); Production Credit Ass'n of Midlands v. Farm & Town Industries, Inc., 518 N.W.2d 339, 346 (Iowa 1994). "Unless otherwise explicitly agreed title passes to the buyer at the time and place which the seller completes the seller's performance with reference to the physical delivery of the goods, despite any reservation of a security interest . . . ." § 554.2401(2). A seller need not be paid in order for title to pass to the buyer at the time of delivery. Estate of Schomer v. Piggot, 439 N.W.2d 190, 192 (Iowa 1989). Whether a transfer of ownership is a sale depends on the objective

intent of the parties about how the business arrangement should be characterized. Fairway Center Corp. v. U. I. P. Corp., 502 F.2d 1135, 1140 (8th Cir. 1974) (citing Rotterman v. General Mills, 245 Iowa 229, 237 (Iowa 1953)). See also Stover v. Fulkerson (In re Bruening), 113 F.3d 838, 840–41 (8th Cir. 1997) (applying Missouri's Uniform Commercial Code, and holding that bankruptcy court did not err in its decision that a transfer of cattle pursuant to an oral agreement was a sale and not a bailment).

### d. Agricultural Lien Priority

There are two types of statutory agricultural liens involved in this case. The first is a veterinarian's lien. A veterinarian's lien becomes effective at the time the veterinarian treats the livestock. Iowa Code § 581.3. In order to have priority over a prior perfected security interest, a veterinarian's lien must be perfected. Iowa Code §§ 581.2, 554.9322(7). In order to perfect the lien, the veterinarian "must file a financing statement in the office of the secretary of state as provided in section 554.9308 within sixty days after the day that the veterinarian treats the livestock." § 581.3.

The second type of statutory agricultural lien involved here is an agricultural supply dealer's lien that arises from IAS's claim. Such liens are established and controlled by Iowa Code Chapter 570A. The supply dealer lien becomes "effective at the time that the farmer purchases the agricultural supply." Iowa Code § 570A.4. In order to perfect their lien, the agricultural supply dealer "must file a financing statement in the office of the secretary of state as provided in section 554.9308 within thirty-one days after the date that the farmer purchases the agricultural supply." Id.; Crooked Creek, 427 B.R. at 507. As with the veterinarian's lien, an agricultural supply dealer

must perfect its lien in livestock feed in order to have priority over a prior perfected security interest. Iowa Code §§ 570A.5(3) & 554.9322(7).

## ANALYSIS AND DISCUSSION

The issue for the Court to decide is whether there is a genuine issue of material fact regarding the question of whether HighSide sold the Pigs to the Shulistas sometime before the Court-ordered bankruptcy sale of the Pigs.

The Court concludes that under Iowa law the undisputed material facts establish a sale of the Pigs from HighSide to the Shulistas. Brett Shulista's affidavit states that he and his wife took ownership of the Pigs from HighSide. Wells Fargo attached invoices that appear to show a sale. They document HighSide's transfer of Pigs to custom growers on behalf of the Shulistas. The invoices contain statements such as: "Delivered from HighSide Pork on 1-19-2009 to Ken Ditch 260 SEW Pigs **for Brett**,"; "Delivery From HighSide to Ken Ditch . . . Signature of Buyer: /s/ Kenneth Ditch/**For Shulista**."; "Delivered from HighSide Pork on 9-18-09 to Adam Schulte Farms 606 SEW Pigs **for Shulista** to Shuster (finisher)." "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes the seller's performance with reference to the physical delivery of the goods . . . ." Iowa Code § 554.2401(2); see also Schomer, 439 N.W.2d at 192 (same).

By presenting the affidavit and the invoices, Wells Fargo properly supported its Motion for Summary Judgment under Bankruptcy Rule 7056. Defendants' response under Rule 7056 "may not rely merely on allegations or denials in [their] own pleading; rather, [their] response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(e)(2) (2010).

Here, none of the Defendants presented evidence to raise a genuine issue of material fact about whether a sale occurred. They argued a lack of sufficient documentation of the sale, but did not show any particular documentation was required. "[A] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Flanagan, 627 N.W.2d at 577 (citing Iowa Code § 554.2204(1) in the context of discussing how Article 2 of Iowa's Uniform Commercial Code has relaxed many formalisms and technicalities of contract formation associated with the common law of contracts). The Defendants here simply had no factual or legal response to the invoices Wells Fargo presented as evidence to support the sale. While they questioned the circumstances of the sale because HighSide and the Shulistas were so closely related, this fact alone does not invalidate the sale or raise issues of fact for trial. Neither VMC, Veterinary Medical Center, nor IAS presented any evidence of fraud, collusion, or other basis that would raise such an issue of fact. Their suspicions and subjective beliefs about the circumstances under which the sale occurred are not enough to raise a genuine issue of material fact on that question. McNicholes v. Subotnik, 12 F.3d 105, 109 (8th Cir. 1993).

The affidavit of Brett Shulista, combined with the invoices documenting delivery, are sufficient evidence to demonstrate that HighSide passed title to the Shulistas for a price and thus completed a sale. Iowa Code § 554.2106(1); Production Credit Ass'n of Midlands, 518 N.W.2d at 346. The Defendants' arguments and affidavit do not raise any genuine issues of material fact on the question of whether a sale occurred. Wells Fargo's Motion for Summary Judgment will thus be granted on the issue of whether a sale occurred.

In the hearing on Wells Fargo's Motion, counsel for VMC and Veterinary Medical Center made a passing reference to the fact that even if a sale occurred, they believed their veterinarian's liens followed the collateral (pigs). As noted, this issue was mentioned for the first time during the telephone hearing. It was not raised in the Resistance to the Motion for Summary Judgment. As such, it is not before the Court in this Motion. See Murillo-Guzman v. U.S., Nos. C08-4003-MWB, CR07-4002-MWB, 2009 WL 3060210 at *1 n.1 (N.D. Iowa Sept. 22, 2009) (where petitioner failed to brief various arguments or otherwise support them by references to the record or applicable law those arguments were not properly before the court) (citing United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994)).

For all these reasons, the Court finds it appropriate to enter summary judgment against Defendants Veterinary Medical Center, VMC Management Corporation, and Innovative Ag Service Company.

**WHEREFORE,** Plaintiff's Motion for Summary Judgment is GRANTED.

Dated and entered:   April 19, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE